[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff filed the complaint for dissolution of marriage on February 11, 1992. The parties were heard on various days from December 30, 1992, through March 15, 1993. The court allowed the attorneys until March 19, 1993 to file briefs. Both parties testified at length, and the plaintiff called two witnesses, her father, Mr. Christopher Smith, and Ms. Lacey Bernier, a family relations officer, whose custody report was accepted into evidence, (Plaintiff's Exhibit A.). The defendant husband called the following witnesses; Mr. Arthur Katz, his present supervisor at Paine-Webber, a stock brokerage firm where he is presently employed; Dr. Sidney Hart, his present psychiatrist, and both his CT Page 4219 parents.
The following facts are relevant and not in dispute. The parties were married on June 8, 1984, and their one minor child, Carolina V. Twohill, was born on November 4, 1989.
According to the defendant's testimony, his physical and mental health and his marriage all began to deteriorate in 1990. And in 1991, he became bedridden with a cold, and then pneumonia, and also suffered from an autoimmune disease, all of which severely reduced his earning capacity.
After changing employers, his earning dropped from over $150,000,000 per year to about $25,000.00 a year in 1991. His financial affidavit dated December 31, 1992, lists his yearly gross earnings at approximately $13,000.00. His present supervisor, Arthur Katz at Paine-Webber, testified that he would most likely lose his job by June or July, 1993 unless his earnings increased substantially.
In May 1991, the defendant began seeing Dr. Hart, a psychiatrist, for depression caused by severe stress from his business misfortunes and the problems he was having in his marriage. To make matters worse, the daughter, Caroline, who was born with a defective leg, required an operation that resulted in partial loss of her leg in October, 1991.
The plaintiff testified that the marriage had problems from the very beginning. In 1990 and 1991, arguments grew more frequent, and the parties grew further apart. The problem of Caroline's leg amputation in October, 1991, the marital home being foreclosed, and with household debts accumulating, made a deteriorating marriage much worse. The defendant was becoming more depressed and was unable to give the plaintiff enough money to pay the normal household bills. All this stress caused them to grow apart emotionally and there was little communication or intimacy.
On February 12, 1992, without telling the defendant, the plaintiff arranged to move, with her minor child, from the martial home in Westport to live with her parents in lower Gwynedd, Pennsylvania. She arranged with a moving van to take approximately one half of the furniture and furnishings and left the rest of it. She left the defendant a letter explaining her reasons for leaving with the child and separate lists of the personal property she had divided between them. CT Page 4220
The plaintiff wife received a degree from Paier College of Art in 1981, and she is now thirty-four years of age and in good health. For the first five years of the marriage, she worked as an interior designer and her average yearly salary was between $35,000.00 and $40,000.00. She left her job to give birth to Caroline on November 4, 1989 and has stayed home to care for her ever since. She plans to find a job after these proceedings are finalized.
Since the plaintiff and Caroline left the martial home in February, 1992 they have been living with her parents in lower Gwynedd, Pennsylvania. The maternal grandparents have supported both of them during this past year since the defendant has been able to contribute only approximately $2,000.00.
The court finds that the marriage had irretrievably broken down at least a year before the plaintiff moved out of the martial home in February of 1992.
The court finds that both parties contributed to the breakdown of the marriage and attributes no fault to either party. Judgement is hereby entered dissolving the marriage on the ground of irretrievable breakdown.
The court has considered the respective claims for relief, the exhibits in evidence, and all of the testimony of the witnesses. The following orders may enter:
1.) ALIMONY:
The court grants the plaintiff the nominal sum of $1.00 per year of periodic alimony until the death of either party, the plaintiff's remarriage or cohabitation as defined by Statute, or eight years from this date, whichever event first occurs. This nominal sum of alimony is based on the defendant's net weekly earnings of $201.00 as shown on his current financial affidavit dated December 30, 1992.
2.) CHILD SUPPORT:
(a) The defendant shall pay child support of $52.00 per week pursuant to the Child Support Guideline commencing on May 3, 1993, which shall continue until the child's death, emancipation, or her reaching majority, whichever event occurs first. The defendant CT Page 4221 shall also submit to the plaintiff his monthly pay record from his employer.
(b) The court finds that as of March 5, 1993 the defendant is $10,163.00 in arrears for child support, and $5,992.42 for failure to pay medical bills, a total of $16,155.42. The court assumes the arrearage of $5,992.42 in medical bill includes the $343.00 check the defendant received from Aetna, and gave to his father and, if not, the arrearage shall be increased accordingly. The court orders the defendant to pay $14.00 per week on said arrearage, which the court may increase on a showing of a substantial change in his financial circumstances.
(c) An immediate wage withholding order may enter.
3.) CUSTODY:
In ordering custody, the court's paramount concern is the best interests of the child. Conn. Gen. Stat. Sec. 46b-56(b). Hall v. Hall, 186 Conn. 118, 121, (1982). The court must consider which parent is better able to help this child reach her full potential. The parenting skills, psychological stability, character and past behavior are all relevant. The ability of the parties to address medical and educational needs is also important. The court has reviewed the criteria relevant in determining custody outlined in Rudolewicz v. Rudolewicz, (Conn.Sup.Ct. Arena, J.) 13 CLT 39 August 20, 1986. The court has also reviewed the custody study prepared by Ms. Bernier, the domestic relations officer, dated December 16, 1992, in which she recommended that sole legal and physical custody be granted to the plaintiff mother subject to the visitation rights of the defendant father.
Ms. Bernier concluded as follows: "Mrs. Twohill presents as a warm and sensitive mother, who has provided the best possible care for her handicapped daughter. She is fortunate to have such giving parents in assisting her help create this. Mrs. Twohill is the psychological parent. She has been the primary caretaker for Caroline since she was born, and her availability to the child cannot be matched. She is the primary parent to whom the child looks for support and nurturance. She provides a stable, secure, loving environment for the child."
From the plaintiff's testimony, and from the facts in the custody study, the Court finds that the plaintiff has superior parenting skills, and that she has provided full time care to this CT Page 4222 child from birth. She is more capable in caring for the child's special needs. The prognosis by the child's doctors is that the artificial leg will have to be changed every other year. The plaintiff has proven that she has the ability, knowledge and patience, to change it. During the past year, the plaintiff has arranged to enroll Caroline in a five day a week pre-school program form 9:00 a.m. to noon, and in a physical therapy program. The plaintiff's testimony on her parenting skills and commitment to Caroline's welfare was totally credible and persuasive.
On the other hand, the defendant testified that he is working full time Monday through Friday, from about 8:30 a.m. to 6:30 p.m. as a stockbroker for Paine-Webber in New York City. Since May, 1991, he has been seeing a psychiatrist for severe depression caused by his misfortunes in his business and family life. He described himself as being emotionally devastated by this divorce and by not being able to see his daughter. The Court finds that evidence clearly indicates that the plaintiff is the more stable parent and psychologically better able to care for the child.
Based on the evidence presented, the Court concludes that it is in the best interest of this minor child, that the plaintiff mother have sole legal custody as well as physical custody and the following additional orders shall enter:
 1. The plaintiff shall provide the defendant with the child's school report cards, and evaluations as well as any reports on school activities.
 2. The plaintiff shall give the defendant advance notice of any medical operation to be performed on the child and any other significant medical treatment the child shall need. Both of the parties shall notify the other of any illness or accident or other circumstances seriously affecting the health or welfare of the child.
 3. The parties shall exert every reasonable effort to maintain free access and unhampered contact, to foster feelings of affection between said child, and that neither of the parties shall do anything which may estrange the child from the other nor injure the opinion of the child as to the other or act in any way so as to hamper the free and natural development of the child's love and respect for the other.
4.) VISITATION, VACATION AND HOLIDAYS: CT Page 4223
Based on the plaintiff's testimony, the court finds that the three day pendente lite weekend visitation arrangement has had a negative impact on the physical and emotional well-being of the child. This arrangement will be more difficult when the plaintiff obtains a full time job. It also causes the child to miss school on Mondays. Therefore, the following orders are entered.
(a) The defendant shall have the child every other weekend beginning on Friday at 6:00 p.m. until Sunday at 6:00 p.m. The pick-up and drop-off point shall be at the Cheasequake rest stop on the Garden State Parkway. No further trips to drop off or pick up the child at the defendants office in mid-town Manhattan shall be required.
(b) The child may spend two non-consecutive weeks with the defendant, one in July and one in August during her summer vacation which shall not be consecutive to the defendants regular weekend visitation. The vacation weeks shall be established no later than May 30th of each year.
(c) The defendant shall be entitled to have the child on President's Day week-end in February and Columbus Day week-end in October of each year.
(d) Christmas is a two-week vacation period for the child. The defendant shall be entitled to have the child the first week that includes Christmas in 1993, and the plaintiff will have the week that includes New Year's in 1993. The parties will alternate in subsequent years.
(e) The plaintiff shall have the child for the Thanksgiving holiday in 1993, and the defendant in 1994, and in subsequent years the parties will alternate.
(f) The plaintiff shall have the child for Easter vacation in 1994, and the defendant in 1995, and in subsequent years the parties will alternate.
(g) The defendant shall be entitled to call the child by telephone every Saturday that the child is not visiting with him between 9:00 a.m. and 9:45 a.m.
(h) The plaintiff shall be entitled to call the child by telephone every Saturday between 5:00 p.m. and 5:45 p.m. when she CT Page 4224 is with the defendant during summer vacation.
5.) HEALTH INSURANCE:
(a) The defendant shall provide medical insurance for the minor child and the parties shall equally share all unreimbursed medical and dental expenses, including the cost of prosthetic devices that the child may need. The provisions of Conn. Gen. Stat. Sec. 46b-84(c) shall apply.
(b) The defendant shall provide the plaintiff with whatever medical insurance that is available from his employer through the Consolidated Omnibus Budget Reconciliation Act (COBRA), and the plaintiff shall pay the premium for such coverage.
6.) LIFE INSURANCE:
The defendant shall name the child beneficiary of the $100,000.00 life insurance policy that is available to him from his employer.
In the event the defendant becomes unemployed, he shall continue to cover the child with equivalent health and life insurance.
7.) DEBTS AND INDEMNIFICATION:
(a) The defendant shall indemnify the plaintiff for any deficiency judgment that may be entered against her from the two mortgages that have been foreclosed on the Westport marital residence.
(b) The defendant's parents have filed a lawsuit against the plaintiff alleging that the plaintiff is indebted to them for $20,000.00 as evidenced by a promissory note. In the event the plaintiff is found responsible, the defendant shall indemnify the plaintiff for one-half of the judgment. If judgment is entered for the plaintiff, the defendant shall reimburse the plaintiff for all costs incurred including attorney fees.
8.) PERSONAL PROPERTY:
The defendant claims that certain personal property removed form the marital home by the plaintiff should be returned to him. The court referred the matter to the domestic relations office for CT Page 4225 mediation. The court reserves jurisdiction to decide this issue should the parties fail to resolve it.
9.) ATTORNEYS FEES:
Each party has requested reimbursement of legal fees in his/her claims for relief. The court denies any reimbursement, and each party shall be responsible to pay his or her respective attorney's fees.
The parties shall be equally responsible for the reasonable legal fee of $7,870.00, submitted by the attorney for the child.
PETRONI, J.